**SO ORDERED.**

**SIGNED this 12 day of February, 2009.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA

IN RE:

**THE HEIGHTS SUBDIVISION, LLC,**

       DEBTOR.                         Case No. 08-06502-8-JRL
                                                          Chapter 11

_____

**ORDER**

This case is before the court on the debtor's motion to assume an executory contract with Eastwood Construction Co., Inc. ("Eastwood"). The court conducted a hearing on this matter on January 30 and February 6, 2009. This order confirms and provides the rationale for the oral ruling at the conclusion of the hearing denying the motion to assume.

**BACKGROUND**

The debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on September 22, 2008. The debtor is a South Carolina limited liability company in the process of developing a subdivision known as The Heights. As of the petition date, Landcraft Management, LLC was the manager of the debtor ("Landcraft"). The debtor executed a promissory note and loan agreement, dated March 17, 2005, with Fifth Third Bank ("Fifth Third") for the purpose of financing

construction of The Heights. The note is secured by a first priority mortgage on all real property comprising the debtor's subdivision. The parties' loan documents require that the debtor pay Fifth Third 100% of proceeds from the sale of lots until Fifth Third is paid in full. The outstanding balance owed to Fifth Third as of November 3, 2008, was $1,086,323.00. On November 3, 2008, the court entered an interim order authorizing the debtor's use of cash collateral (the "Interim Order").

Eastwood is a real estate development company that contracts with developers to purchase finished lots in new residential subdivisions, builds homes on the lots, and then sells them. On February 21, 2005, Eastwood entered into a contract to purchase up to 156 lots in the debtor's subdivision upon their completion (the "Contract"). As of the date of petition, Eastwood had purchased 59 lots. On September 23, 2008, the debtor filed a motion to assume the Contract with Eastwood. Eastwood objected to the debtor's motion and a hearing was scheduled for October 31, 2008. Pursuant to an order entered by the court, the hearing on the motion to assume the executory contract was continued until January 30, 2009.

## DISCUSSION

Eastwood alleges that the debtor may not assume the Contract because the Contract is in default and the debtor cannot provide adequate assurance of future performance. The Bankruptcy Code provides that a debtor-in-possession may assume or reject an executory contract of the debtor. 11 U.S.C. § 365(a). However, if there has been a default in an executory contract, assumption is precluded unless the debtor-in-possession "(A) cures, or provides adequate assurance that [it] will promptly cure, such default . . . ; (B) compensates, or provides adequate assurance that [it] will promptly compensate, a party . . . for any actual pecuniary loss . . . ; and (C) provides adequate

assurance of future performance under such contract . . . ." Id. § 365(b)(1).

Eastwood assets that the Contract is in default for at least two reasons. First, Eastwood contends that the debtor violated the Contract by failing to complete construction of certain amenities. At hearing, Eastwood established that Exhibit B of the Contract required the debtor to "install an amenity area consisting of a 30' x 50' pool and cabana using a budget of no less [than] $210,000 . . . ." Contract and Option to Purchase Real Estate, Exhibit B. In support of Eastwood's contention, Chris Day, Eastwood's division president in Greenville, South Carolina, testified before the court. Mr. Day established that no work had begun on construction of the amenities since the Contract was executed on February 21, 2005. On cross-examination, Mr. Day admitted that the Contract did not impose a deadline for the completion of amenities and indicated that it was reasonable to allow the debtor until the summer of 2009 to complete construction. However, Mr. Day established that the lack of amenities at The Heights adversely affected Eastwood's ability to sell lots.

Second, Eastwood argues that the Contract is in default because the debtor has failed to comply with soil maintenance requirements. Specifically, Eastwood contends that the debtor is in breach of Paragraph 1(C)(13) of the Contract. Paragraph 1(C)(13) requires that all temporary and permanent stormwater management features must conform with government-approved development plans and pass government inspection. Contract and Option to Purchase Real Estate, Para. 1(C)(13). At hearing, Heather Haynes, a regional director with Alpha Environmental Management Corporation ("Alpha Corp") and an expert in soil erosion and stormwater prevention, testified on behalf of Eastwood. Ms. Haynes established that the debtor and Landcraft submitted erosion control plans to Greenville County which provided for weekly stormwater inspections at The Heights. However,

Ms. Haynes established that the debtor and Landcraft had failed to hold weekly inspections on site since June 23, 2008.

Ms. Haynes further established that Alpha Corp performed three audits of The Heights between October 2008 and January 2009. At the conclusion of each audit, Alpha Corp determined that the debtor and Landcraft were not in compliance with erosion control requirements. Ms. Haynes established that the debtor and Landcraft failed to install erosion and sediment controls and allowed the soil to deteriorate below federal and state standards. For example, Ms. Haynes established that the debtor failed to install rip rap aprons, sediment dykes, and a perimeter silt fence. On September 9, 2008, the Department of Health and Environmental Control ("DHEC"), a South Carolina agency responsible for stormwater enforcement, discovered these erosion and stormwater issues during an inspection of The Heights. As a result of its inspection, DHEC ordered the debtor to correct all silt fence and certain erosion issues by September 24, 2008. However, Ms. Haynes established that Alpha Corp discovered the same erosion and stormwater issues during an audit in January 2009.

Additionally, Ms. Haynes established that if the debtor did not take corrective actions regarding its erosion and stormwater issues, the debtor could trigger governmental enforcement actions. As a result of an audit performed at The Heights on January 22, 2009, Ms. Haynes discovered 35 potential violations of the Clean Water Act. Ms. Haynes established that each violation of the Clean Water Act carried a maximum fine of $32,500.00. In addition to the Clean Water Act, Ms. Haynes testified that The Heights was not in compliance with South Carolina's general construction permit, the National Pollutant Discharge Elimination System stormwater permitting system, or the debtor's own erosion control plans. Ms. Haynes further testified that she

could not recall visiting another subdivision with as many sediment and erosion control problems as The Heights, with the exception of one other Landcraft-managed subdivision that was in Chapter 11 bankruptcy.[1]

Eastwood further contends that the debtor lacks sufficient funds to correct the erosion and stormwater issues. At hearing, Joe Dority testified on behalf of Eastwood. Mr. Dority, Vice President of Eastwood Development, established that he worked with contractors who handle erosion issues on a regular basis. Mr. Dority estimated that the cost to repair the soil erosion issues at The Heights would be approximately $150,000.00 to $175,000.00. Also at hearing, Ms. Haynes established that actions to correct violations at Lots 13-19 alone would require "a major undertaking" and would include refilling, regrading, and restabilizing a slope, at significant expense to the debtor.

In response to the evidence presented by Eastwood showing numerous erosion and stormwater violations, the debtor acknowledges that erosion and stormwater issues exist at The Heights but contends that it can cure these issues. On cross-examination, Ms. Haynes admitted that the erosion and stormwater problems outlined in her reports could be corrected. Ms. Haynes also admitted that Alpha Corp's audits focused only on the portions of The Heights that were under land development. The debtor argues that the budget included in the Interim Order provides excess funds from which its stormwater and erosion violations can be cured. The debtor further argues that there is no evidence that erosion issues were the reason for a decline in the sale of lots. As a result, the debtor contends that the erosion and stormwater issues should not preclude it from assuming the

---

[1] Kelsey Glen, LLC moved to withdraw its motion to assume its executory contract with Eastwood following the conclusion of this hearing.

5

Contract.

Next, Eastwood argues that the debtor is unable to provide adequate assurance of future performance. First, Eastwood contends that the debtor cannot perform its contractual obligations because it lacks capable management. Scott Stover, a member of the debtor and Landcraft, testified before the court. On cross-examination, Mr. Stover established that the number of people employed by Landcraft declined from approximately 20 in January 2008 to five in December 2008. Mr. Stover also confirmed that Landcraft was a debtor in Chapter 7 on the date of hearing. Additionally, Mr. Stover admitted at hearing that he had not visited The Heights during the previous six months. As a result, Eastwood asserts that the debtor lacks competent management and cannot perform its contractual obligations going forward. Second, Eastwood contends that the debtor cannot provide adequate assurance of future performance because it cannot obtain additional financing. At hearing, Mr. Stover testified that Fifth Third was willing to work with the debtor to provide additional construction financing. However, Fifth Third filed a notice of default on February 4, 2009, in which it alleged that the debtor failed to make payments to Fifth Third as required in the Interim Order. On cross-examination, Mr. Stover admitted that the debtor was required to pay Fifth Third approximately $14,101.00 between July and September 2008 but that the debtor had failed to make any payments to Fifth Third since filing bankruptcy. In addition, Mr. Stover admitted that the debtor had not finalized an agreement with Fifth Third for additional construction financing. Also at hearing, counsel for Fifth Third indicated that Fifth Third was unable to commit to provide additional financing for construction and correction of erosion control and stormwater deficiencies.

The court finds that the Contract is in default and that the debtor has failed to provide adequate assurance that it can promptly cure such default or perform going forward. The debtor

6

committed a material breach of contract as a result of its failure to comply with the stormwater provision in paragraph 1(C)(13) of the Contract. Under this provision, the debtor is required to install stormwater features that pass government inspection and receive government approval. Through the testimony of Ms. Haynes, Eastwood presented credible evidence that the debtor consistently failed to monitor the site or maintain erosion control measures since at least September 9, 2008. As a result, the debtor was unable to present any evidence that the government had approved its stormwater features. In contrast, the court found to be credible Ms. Haynes' testimony that the erosion and stormwater deficiencies at The Heights constituted violations of federal, state, and municipal law. In addition, Mr. Dority established that the cost to correct these deficiencies would be between $150,000.00 and $175,000.00. This is an expense that the debtor simply cannot afford. The debtor's ability to complete construction, maintain erosion control, and cure its defaults rests on its ability to obtain additional funding. The debtor has presented no credible evidence that it can obtain such financing. On the contrary, Fifth Third issued a notice of default against the debtor while this hearing was pending. In addition to the debtor's failure to comply with erosion and stormwater measures and its difficulty in obtaining additional financing, the court finds that the debtor cannot provide adequate assurance of future performance because its management company has suffered a substantial reduction in staff and is in Chapter 7 bankruptcy.

Based on the foregoing, the debtor's motion to assume its executory contract with Eastwood is DENIED.

"END OF DOCUMENT"